Here to you, here to you, here to you, Ms. Honorable Pellet Fork of the 2nd Judicial District is now back in session to discuss the future. Honorable Robert D. McClendon presides. Please be seated. Your Honor, in this case we've got 2-14-0435. He's in the state of Illinois. He's in California. Mr. Victor F. Mujica is coming to the court. I remind you on behalf of Mr. McClendon, Attorney Ms. Sherry R. Silver. I remind you on behalf of Ms. Kathleen, Attorney Ms. Victoria E. Joseph. Ms. Schultz-Silver. You may proceed. Thank you, Your Honor. Good morning again, Your Honors. Counselor, please support me. I'm Sherry Silver and I represent Victor Mujica. Just a very brief chronology. At the very beginning of this case, Mr. Mujica was charged with predatory criminal sexual assault and he was represented by John Gaffney. He wanted to plead guilty. They had negotiated a plea for a 4-year sentence and he came in to plead before Judge Enhelsma and said that he was pleading to make the lady happy or something like that, meaning the victim's mother, and the judge would not accept the plea. They then set it for a bench trial after that and Gaffney was given leave to withdraw and Mario Perez stepped in on December 30, 2010. Perez asked for a continuance. Before Perez stepped in, the offer that had been on the table expired, correct? Yes, it expired on November 29, 2010. There's nothing in the record to suggest that there were any new negotiations, correct? Well, there may be something in the record. What? At the hearing on May 18, 2011, after Mr. Perez had been out with his illness and his hospitalization, he came in and said on the record that he had been talking to the state's attorney. Now, what he was talking about, we don't know. It could have been an offer, it could have been his illness. Again, there's nothing in the record to suggest that plea negotiations were ongoing, correct? Just that statement by Perez that he had been talking to the state's attorney. Prosecutors and defense attorneys talk all the time about exchanging discovery, dates for hearings, witnesses, etc., correct? That doesn't suggest that there was a new offer on the table, does it? No, but it supports Mr. Perez's allegations in his petition and his affidavit that he had conversations and that there was a conversation that occurred outside of the record that we have, which is what the problem is here, and that it very well could have been that there was a plea offer made and that he told Perez that he wanted to plead. We don't know that. You say in your brief that there's, quote, nothing in the record from which it could be inferred that the circuit court would not have ultimately accepted the plea if he had decided to go in that direction. But didn't the defendant testify at the trial that he never touched M.A. and did not know why she would accuse him of such an act? Yes, but there's also things like Alford pleas where you can plead guilty. I'm sorry, I didn't hear what you said. An Alford plea. We don't have Alford pleas in Illinois. No, but we do. We have pleas of guilty, stipulated men's trials, and when the defendant attempted to plead guilty, the trial court said that's not a voluntary plea. You're pleading to make somebody else happy, not because you are guilty. Where's the indication? You say there's nothing in the record that would infer that the circuit court would not have ultimately accepted the plea. If the defendant is maintaining his innocence, which is apparently what he was doing, what he told his attorney, he didn't do it. Well, his attorney put him on the stand, correct? Correct. Presumably the attorney knew he was going to maintain his innocence throughout the trial, correct? Correct.  a plea of guilty from someone who is maintaining his innocence and saying I did not do it. Even though Illinois does not recognize Alford pleas, we still recognize that a person can plead guilty for any number of reasons. You didn't put that in your brief. That's not in your brief. That is a reason in the record why the circuit court would not have accepted the plea of guilty, because it's exactly the same reason the court wouldn't accept the plea of guilty initially. The defendant was pleading to make somebody else happy, not because he was in fact guilty, correct? Correct. But I also put in that he could have pled guilty for any number of reasons. The circuit court rule is pretty clear. The circuit court has an obligation, affirmative obligation, to determine the voluntariness of the plea, correct? Yes. And if the defendant wanted to accept the offer, there's another way to do that. He could have stipulated. There could have been a stipulated bench trial, correct? He could have, yes. Either way. But either way, he could have negotiated a sentence. I've seen stipulated bench trials when they have a negotiated sentence. He could have done that. That is true. You, in your brief, say Victor Majica raised the gist of a claim that his trial counsel, Mario Perez, was ineffective by failing to relay to the prosecutor or judge that he, Majica, wanted to accept the plea offer that had allegedly been presented to Perez. Yes. This is an anthomy because it presumes something without stating it, and that is it presumes that something was presented to Perez and, even though you don't say it, and that Perez then presented it to Majica and then you presume, but you don't say it, that Majica told Perez to tell the state and the court that he was willing to accept the plea. I'm sorry. Can I interrupt? That Perez told Majica to say this? I think that was your last part. You said that Perez was ineffective for failing to convey or relay to the prosecutor that Majica wanted to accept the plea offer that had allegedly been presented to Perez. Yes. There's an assumption here that Perez then told Majica and Majica then told Perez, is it not? Otherwise, why would Perez make a communication back if Majica said, so what, I'm innocent? I'm sorry. In other words, what I'm getting at is your statement here is presuming things that aren't necessarily of record, which is, number one, relay to the prosecutor, the judge, that he wanted to accept the plea offer. You haven't stated what that plea offer was that the state supposedly presented. Mr. Majica says in his petition that it was a four-year plea offer. Now, the state is saying that he conflates it. It was a new four-year plea offer? We don't know that. We don't know. Because of the statement that Mr. Perez says on the record that he had been talking with the state's attorney, we don't know. But that's the point of the post-conviction petition. These things are outside of the record. And all he needs to do is state the gist of this claim. And we're contending that he did state the gist of this claim. And all it needs is the appointment. Did he file an affidavit saying that Perez told him that there was a plea and that it was four years and that he then told Perez, tell the court and the state's attorney, I'm willing to accept this new plea that supposedly happened sometime after May 2011, sometime after Mr. Perez was talking with the state's attorney? In Mr. Mojica's affidavit in the record C-154, paragraph 3, several months prior to the August 23, 2011 trial, my trial attorney Mario Perez approached me with a deal to plead guilty offered by Assistant State's Attorney Ann Switzer. Paragraph 4, if I agree to plead guilty to criminal sexual assault, I would receive four years in prison. I took time to think about the deal and later told Mr. Perez I wanted to plead guilty. So he did tell Mr. Perez. And it's in his affidavit. It's in an affidavit. And it is the evidentiary affidavit that's attached to his petition. The state says that there are no affidavits. There is an affidavit. It's Mr. Mojica's affidavit. And it refers to Mr. Perez. It refers to Ann Switzer. It refers to the interpreter whose name I apologize I can't pronounce. And the state's point is he could have gotten or could have requested affidavits from the Assistant State's Attorney or from the interpreter, and those are not attached. No, but there's absolutely no requirement that every single potential witness needs to have an affidavit at this stage. But here you have indications in the record that positively rebut his assertions. It's the plea agreement. The state put out a record when there was a plea agreement outstanding and also put out the record when it would expire. Under Gaffney. Under Gaffney's representation. Well, under Gaffney. But the Assistant State's Attorney was making that statement. Why wouldn't he make the same comment on the record if he had extended an offer to Perez? I mean, his conduct, the State's Attorney's conduct, which given the new, not relatively new, but not in Illinois, it's always been the case, you have to convey plea offers. The state has been making pains to make a statement on the record, Judge, there's an offer outstanding. Here's what's going to expire. But there's no indication in the record from the state that there had been another offer. No, and the state points out. And in addition to that, your client denied any wrongdoing, said he had no idea why MA would make up this story. During the original proceedings, yes, yes, that's true. But if he had a deal, if he had an offer that was made to him for the four years, re-offered under Perez's representation, and he wanted to take that, and the conversations occurred outside of the record, and the gist of this claim has been raised, it's been supported with an affidavit, it's got documentation, potentially documentation the other way, all it would have taken was the appointment of an attorney for the second stage proceedings and three phone calls. Why in your briefs did you not discuss the fact that the defendant testified at trial and denied any wrongdoing? I didn't think it was relevant to the post-conviction petition, the issue that was raised. That's not relevant? I didn't think so. Maybe I was wrong, Your Honor. I don't know. But I didn't think that considering the nature of the issue that was in the post-conviction petition that it would not have added to it. Well, you say nothing in the record suggests that the court would not have accepted the plea, but the court had already rejected the plea when the defendant was maintaining his innocence. And that is in my brief. I do have that in the brief, yes. I do talk about how Judge Anhelsma did reject it for that reason, yes. Unless there are other questions, we're just asking that Your Honor reverse the summary dismissal. The gist has been made. It's been supported by affidavits. In terms of the affidavits from the prosecutor, we do argue in the reply brief that getting it from the prosecutor and affidavit from the prosecutor would probably be as equally difficult as getting it from the attorney whose representation you're attacking, and that the interpreter, he had the wrong name, and the state even uses the wrong name in their brief. The correct name is showing up in the docket sheets. What date did he allegedly tell the interpreter that he wanted to plea guilty? That was the hearing on April 20th of 2011. The transcript from that date does not indicate an interpreter was present. No, it does not. There's no interpreter indicated on that at all. But when you look in the docket sheets, I want to say C-127 is the docket sheet for that date. I can't remember right offhand. There's two sets of docket sheets. One is, I think, 127 and one is 167. I think those were the page numbers. But it does show that that was the interpreter's name, and it's not the name that he used in his affidavit. He had the wrong name and not the name that the state used. Again, going back to this point in his affidavit, there's no explanation in his affidavit why he wanted to plead guilty other than the fact that there was an offer. He doesn't explain why he wanted to accept the plea of guilty despite maintaining his innocence, correct? That's not in his affidavit. No. But they just need to determine that it's voluntary. They don't need to say that, you know, I'm gung-ho about this. They just need to say that it's voluntary and show that it's voluntary. So there is no allegation of that, no attestation to that. No, that's true. Are there no more questions? I don't have any. Thank you. Thank you. Ms. Joseph? Good morning again, Your Honor. May it please the Court and counsel? Counsel set out the summary of the sequence of events in this case fairly well. The record is fairly concise on what the issues are in regards to the post-conviction petition. We had an offer that was on the table. It was taken off when the defendant came, or it was, I don't know, whatever the Wednesday after November 5th of 2010 was, that's when the defendant did assert on the record that he wanted to plead guilty. That guilty plea was not accepted as voluntary. The ASA informed that the offer would then be open until November 29th. When they came in on November 29th, it was Gaffney who was still representing the defendant. He informed that he had spent time talking to the defendant, and the defendant wanted the bench trial. And the judge asked the defendant, is the statement correct? And the defendant agreed. That is what he wanted. And conveniently, the date when the defendant indicates in his affidavit that he wanted to plead guilty, Mr. Perez was not there, correct? On the 20th, no. He was not there. That is on page 122 of the common law record. And I believe it was Lydia that was present as the interpreter on that date. Because I have two dates where there was no interpreter present. But I believe it was Lydia on the 20th. And, again, that would be on 122 of the record. If he did make such a statement to her, that was not on the record. The conversation that the defendant alleges in his affidavit that occurred between him and the trial judge also did not happen, according to the record. So there's ‑‑ that's why the people are unsure whether he is conflating two occurrences or not. But the allegations are rebutted in some respects. No, there is nothing on the record that affirmatively states one way or the other that there was a second offer. We do not know that. We just know when one expired and the fact that the cause was never taken off the trial call after the defendant agreed that he wanted to go to a bench trial. It was never removed from a call after that. Okay. But the fact that if he was making statements to additional people about this desire to plead guilty, that is where we come in and state that those would be affidavits that would support the allegations because the record is rebutting them currently. And that is the necessity of meeting either the evidentiary requirement of 121.2 or actually meeting the pleading requirement that he could not obtain an affidavit, at least from Lydia, to whom he said he told that he was ready to plead guilty and the case was continued because those were not the events that took place on the record. Your position is the April 20th transcript does not record what the defendant allegedly said to the interpreter? No. I don't think it ever does. That's my point. It's what the interpreter says to the court. Yeah, it is what the interpreter says to the court. But the fact that you did have the defendant who appeared on the 29th and said, I want to plead guilty, that was on the record. So if and that is why the affidavit is important to have. If he did say it and it wasn't made part of the record because the record is not supporting the allegation as it stands and if this was something that was further stated off the record, then there needs to be something to support his claim. This interpreter was a regular interpreter? Yeah, there are two regular interpreters in the courtroom. And they're sworn to accurately interpret what the defendant is saying and wants to convey to the court, correct? Correct. And is there any, just like in effective assistance, is there any presumption that an interpreter is going to accurately, once they're sworn, that they're going to accurately interpret what the defendant says and convey that to the court? I'm not aware of any case law, but I would certainly hope that that's the presumption that you're making. They're there to aid the court. They're there to aid the court and to aid the party that needs the interpreting. I mean, just as much as you're hoping that you're telling the court correctly, you're hoping that they're conveying what the court is saying to the party. Just like any court officer, attorney, shouldn't there be a presumption that an interpreter who's sworn is there to aid the court, that there's a presumption they're going to convey and honor their oath and truthfully convey and interpret what the defendant says to the court? I would say so, Your Honor. And if, like I said, if there was a statement made that was not part of the actual hearing to the interpreter, that is something off the record that we have no support of. And that is why the additional information is needed under 122-2, either through the evidentiary requirement or the pleading requirement as to why that cannot be given. Because as it is right now, the allegations in this affidavit do not match what occurred on the record. Do you agree with defense counsel that the defendant's denial of any wrongdoing at trial has anything to do with voluntariness or his now claim that he wanted to plead guilty? Well, as far as if you were going through accepting a plea, there wouldn't be an inquiry into a defendant, oh, hello, do you think you're not, are you maintaining your innocence? That it's looking for if it's voluntary, free of any promises, and you would be. Well, the trial court rejected his attempt to plead guilty when he said he was pleading guilty to somebody else. Yes. Does that mean it's involuntary? The court did find that was involuntary because it wasn't, he wasn't finding it of his own free will of what he wanted to do, but he was doing it for somebody else. But it really wasn't making a statement whether or not he was maintaining his innocence either way. The fact that he brought up, well, I guess I'm just going to do this to make somebody else happy, it really said nothing to his maintenance of his guilt or innocence. And from the guilty pleas I've seen, a trial judge doesn't necessarily delve into that. However, in some cases you do have a stipulation to the factual basis, and at that point obviously the defendant would be stipulating to, yes, I did do this. But here we didn't have that because it went to a trial where he did maintain his innocence. Is this the topic of conversation that a crankle hearing might involve? Judge, he's ineffective, he didn't convey the plea, and then there would be a crankle inquiry? It could be the subject of a crankle inquiry. Well, the point is that if he knew that his lawyer didn't convey the plea agreement or attempt to accept it, then he knew when he went to trial that he wasn't pleading guilty. So that's essentially the beginning of the timeline that would indicate that he knew something was amiss. Well, if you're going forward on trial, you know that there hasn't been a plea that's accepted. If you've been convicted but not sentenced or at the sentence hearing, if you didn't have a complaint, then you wouldn't raise the issue. But if you had a complaint, you might raise the issue and say that I wanted to plead guilty, and then there could have been a crankle hearing. And then maybe there could have been an appeal. And then maybe there wouldn't be the need for a post-conviction petition. Well, there was no post-trial motion, and this Court allowed the defendant's late appeal, correct? That is correct. There was no post-trial motion. So to answer the question, the defendant never brought it up. He never brought it up. Could he have brought it up? Yes. Obviously, we just had a case earlier this morning where a defendant was bringing all kinds of things up before sentencing. The defendant could have brought it up in elocution. He could have brought it up at any time he wanted to bring up a claim that his counsel was ineffective. And even our Supreme Court has even held that the timeliness of a post-trial motion is not binding upon such a claim of ineffective assistance of counsel. So at any time, he could have brought it up. But he would have had to bring it up in that sort of vein because it did include conversations that occurred outside of the record. So as far as bringing it up on a direct appeal, no, without taking an action such as a crankle claim before that. And that's why we agreed that this was not something that could be dismissed via res judicata. So that was an improper dismissal as far as the grounds for the dismissal was improper. But there was reasoning to support where the record is currently contradicting his claims and he wasn't supporting it with the evidentiary requirement of 122-2. Any other questions? I believe there's no further questions. Okay. Thank you. Ms. Silver. The hearing on April 20th of 2011, it does not reflect what the defendant said to the interpreter. It does not reflect anything that the interpreter may have said to the judge, assuming there was anything said. We're not going to assume that. That does not necessarily mean that he didn't say something to her. Her job is a court interpreter to assist the court and to assist him. She is not a lawyer. And if he were to say to her, I want to plead guilty, it's not her job to tell the judge that. Isn't it her job to repeat everything that he says? If questions are put, yes. I would submit that, yes, if the judge is asking directly. You're suggesting to me that there's a conversation going on between the court and the prosecutor about where is Mr. Perez, what's going on, yada, yada. And the defendant is speaking that the judge wouldn't turn to the interpreter and say, you know, what did he say? We don't know that. Maybe he was whispering, maybe he waited until the hearing was nearing its end. At the same time that she's also, she being Lydia, I assume, is saying to the defendant, all right, the judge just said, all right, Mr. Majerka, the reason I called your case early today, blah, blah, blah. She's saying that to him. Right. She's interpreting that to him. And then taking a pause and when the prosecutor responds, that's all going on. Right. But there's no questions being put to the defendant. There's nothing being asked of him. But your position would be that he just begins to talk. He may have said to her, whispered to her, you know, I want to plead guilty. You know, in a courtroom, an interpreter is required. Interpreters swarm. And the interpreter is to convey to the court everything that the defendant says. But this is a desire to plead guilty, something that a lawyer would convey to the judge. No, it's words. It's a statement. It's like I want to go to the washroom. I want to see the dog. I'd like a recess. Can I visit with my family that's here? I would argue that there's more import to it. That when somebody wants to come into a courtroom and say I want to plead guilty, it's the lawyer or the defendant representing himself. But are you saying that interpreters are to discriminate and repeat only the things that they deem to be important? You can't mean it. That is not their sworn job. No. I would say that that is correct. Everything. That is correct. And if he said I would like to say hello to my family or he would say I want to plead guilty, the interpreter is not to decide which of those statements is more or less important but to repeat all of it. Under their oath, I would agree that that is what they are supposed to do. Whether that happened in this case, we don't know. But all we know is that he has made the gist of this claim. We can appoint, you can send this back and appoint and make that phone call to me. What's the purpose of our, we review this de novo, correct? Yes. So is what happens on the record irrelevant? Don't we review the entire record to see whether or not the defendant's claim is positively rebutted by the record? Absolutely. And doesn't the absence of any suggestion on the record tend to rebut the defendant's affidavit that he wanted to plead guilty? But I'm saying that we're not. I understand what you're saying but would you agree that that tends to rebut his affidavit? Which part of it? The part that there's nothing in the record to suggest that what he's claiming to be true now is true. From the record of April 20th. But then you have Perez saying. You also have this comment before and after. Before saying I want to plead guilty to make her happy and later maintaining his innocence. Plus nothing in the interim from the state or anybody to suggest that plea negotiations are ongoing. What's the purpose of our review of the record if all we look at is the defendant's affidavit? What's the point? I'm not sure what that question is. Well the point is that we do review, we review the entire record. Correct. Okay. Correct. The entire record including the hearing of May 18th of 2011 when Perez says I'm in conversations with the state's attorney. We don't know what those conversations were. If they were conversations that did have to do with a plea offer then perhaps Mr. Perez is fully truthful in his attestations. And all we need to do is move it to the second stage. When they come up on August, I think it's August 22nd and witnesses are called for a bench trial. Yes. At some point isn't your client charged with the knowledge that hey, wait a second, wait, wait, wait, I want to plead guilty here. You know, hey, didn't you tell them I wanted to plead guilty? He probably could have. He probably could have stood up, stumped his feet and said I wanted to plead guilty. You're absolutely right, Your Honor. But he didn't. What is failure to do so is in the record and that does rebut his affidavit. The fact that he doesn't say, you know what, I've changed my mind, I want to plead guilty. Can we also, I'm sorry that that was not true. Go ahead. Go ahead. No, you go ahead. All right. My point was this. Even if we assume for the sake of argument maybe he wanted to plead guilty on April 20th, by the time we get to August, he's back to a bench trial. Because Perez moved ahead with the bench trial. That's his claim in his petition, that Perez is the one that moved to the bench trial without conveying his wish to plead guilty. That's his claim. But wouldn't the gist of the claim be that on the morning that we went to bench trial I told my attorney I wanted to plead guilty and we went to bench trial anyway? He doesn't say that in his, he doesn't say that on the morning of the bench trial. But he does say that he did tell Perez. He doesn't give a specific date. He did tell Perez. Is he required to give a specific date at this stage of the post-conviction proceedings? No. Let it go to the second stage. Appoint an attorney. Make those three phone calls to Ann Switzer, to Mario Perez, and to the interpreter. And either whip the petition up to address these concerns or follow the procedures under Greer. Whichever one is going to fit. But we ask that you do reverse this summary dismissal and send it back for the second stage proceedings. Thank you. Thank you. We'll take the case under advisement. There are no further cases on the call. Court's adjourned.